# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP  DIVISION

| | | |
|---|---|---|
| **LISA GAIL THOMPSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:15CV00022 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CAROLYN W. COLVIN** | ) | By:  James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | United States District Judge |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Joseph E. Wolfe, Wolfe, Williams & Renolds, Norton, Virginia, for Plaintiff; Nora Koch, Acting Regional Chief Counsel, Region III, Quinn E. N. Doggett, Assistant Regional Counsel, and Theresa A. Casey, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

## I.

Plaintiff, Lisa Gail Thompson, filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434, 1381-1383f.  Jurisdiction of this court exists under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Thompson filed an application for DIB and SSI on June 3, 2011. The state agency that makes determinations for the Commissioner denied Thompson's applications on November 1, 2011. Thompson protectively filed a second time for DIB and SSI on February 3, 2012. The applications were initially denied on May 7, 2012, and again on reconsideration on January 29, 2013. Thereafter, Thompson obtained a hearing before an administrative law judge ("ALJ") on April 1, 2014. On May 1, 2014, the ALJ issued a written decision finding that Thompson was not disabled within the meaning of the Act. Thompson requested review by the Social Security Administration's Appeals Council. The Appeals Council denied her request for review on August 10, 2015, thereby making the ALJ's decision the final decision of the Commissioner. Thompson then filed this action seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, and this case is now ripe for decision.

II.

In assessing disability claims, the ALJ applies a five-step sequential evaluation process. The Social Security Administration regulations set out the five-step process as: (1) whether the claimant has worked during the alleged period of disability; (2) whether the claimant has an impairment that meets the regulations' severity and duration requirements; (3) whether the claimant has a

2

condition that meets or equals the severity of a listed impairment; (4) whether the claimant could return to her past work, given the medical impairments; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2013).

During the first and second step, the claimant bears the burden of proving that she is under a disability, and if she fails to do so, she is determined not to be disabled. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). At the third step, the claimant can still establish her disability if she shows that her impairments match a listed impairment. *Monroe v. Colvin*, No. 15-1098, 2016 WL 3349355, at *2. (4th Cir. June 16, 2016) (citing *Mascio v. Colvin*, 780 F. 3d 632, 634-35 (4th Cir. 2015)). If the claimant fails at steps one, two, and three, then at step four, the ALJ makes an assessment of the claimant's residual functional capacity ("RFC").[1] The claimant still bears the burden of showing that her "physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). At step five, the burden shifts to the Commissioner to prove by a preponderance of the

---

[1] RFC is the most the claimant can do despite physical and mental limitations that affect her ability to work. 20 C.F.R. § 416.945(a)(1).

evidence that the claimant can, in fact, engage in substantial, gainful work, which exists in the national economy.[2] *See Monroe*, 2016 WL 3349355, at *2.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through the application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is not the role of the court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

I have carefully reviewed the evidence and conclude that the ALJ's decision in this case is supported by substantial evidence and was reached through application of the correct legal standards.

## III.

The plaintiff was 43 years old when she claimed disability on June 3, 2011. She has limited education and a work history as a factory worker and a cook. She

---

[2] "The commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *See Monroe*, 2016 WL 3349355, at *2 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

last worked in May 2008. She claims disability based upon depression, panic attacks, right knee pain, and wrist problems. The medical records show that Thompson has long-standing reports of right knee and low back pain, but there is little in the record showing objective findings or medical treatment of those impairments.

In August 2011, the plaintiff reported to Stone Mountain Health Services with complaints of right knee pain, back pain, and depression. The physician assessed her as having depression, generalized anxiety disorder, and chronic pain. The plaintiff was prescribed Celexa for the depression and anxiety, and ibuprofen for the pain. She subsequently returned to Stone Mountain Health Services in September 2011 to report that the Celexa was ineffective. At that visit, the Celexa was discontinued and hydroxyzine was prescribed for treatment of her anxiety.

Also in September 2011, the Disability Determination Service ("DDS") requested that the plaintiff have an X ray performed on her right knee at Norton Community Hospital. The X ray showed degenerative changes, but no injuries.

In October 2011, DDS requested that the plaintiff attend a physical consultative exam by Kevin Blackwell, D.O. She reported depression, right knee problems, and a lump on her right wrist. Dr. Blackwell determined that the plaintiff had tenderness along the right MCL and a ganglion cyst on her right wrist.

5

He also noted that she had a symmetrical and balanced gait, normal strength in the extremities, and normal range of motion throughout.

In December 2011, Thompson visited an emergency room for increased lower back pain. She was x-rayed, which showed lumbar degenerative changes, including spur formation and disc space narrowing. She was prescribed medication and a week later presented to the Community Clinic for follow-up treatment, at which time she indicated improvement in her lower back.

In May 2012, the plaintiff returned to Stone Mountain Health Services for a follow up of hypertension and anxiety. She was prescribed Paxil for anxiety and was referred for counseling.

In December 2012, DDS requested that the plaintiff undergo another X ray of the right knee. The results were the same as the previous X ray, showing only degenerative change. DDS made another request in January of 2013 that the plaintiff return to Dr. Blackwell for another consultative exam on her knee and back. His assessed her as having right knee pain, hypertension, depression, and anxiety.

The plaintiff's last doctor's visit was to a primary care office in July 2013. The notes indicate swelling in the bilateral legs with no current use of medication and no detailed physical examination findings.

Since July 2013, there has been no follow-up treatment for the plaintiff's mental problems, right knee pain, or lower back pain. She testified at the hearing that during her visit to Stone Mountain Health Services in July 2013, she was prescribed Paxil and blood pressure medication. However, she admitted that she quit taking the Paxil "because it made [her] feel funny," and she has not been taking the blood pressure medication because she did not have the money to pick it up. (R. at 73, ECF No. 7-1.) Based on these medical findings, the ALJ acknowledged that the plaintiff experiences some pain and discomfort from her severe impairments, but the objective medical findings show the plaintiff's symptoms are not as severe as alleged.

## IV.

In her written decision, the ALJ analyzed the medical evidence and found that it simply does not corroborate the level and effect of the plaintiff's alleged symptoms. Thompson has received very limited treatment and no treating physician indicated that she was disabled. Further, despite all of the allegations of significant pain, the plaintiff has not received regular ongoing care, undergone surgery, wore a brace, received therapy, or used any assistive devices for standing.

The ALJ found that Thompson has severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, and obesity. She also found that Thompson has hypertension and a ganglion cyst on

7

her right wrist, but did not consider these to be severe impairments, as defined by 20 C.F.R. §§ 404.1509 and 404.909.

The ALJ also noted that Thompson had been diagnosed with depression and anxiety by her primary care physician; however, she has not sought any formal mental health treatment. Further, she was prescribed anti-depressant medication, but admitted that she stopped taking the medicine. The ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listings of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1). She found that (1) the plaintiff has no limitations in her daily activities, as she can perform her own personal care, prepare simple meals, do some light household chores, shop in stores, watch television, read, paint, handle money, and pay bills; (2) the plaintiff has no limitations in social functioning, as she denied any problems getting along with others, indicated that she did not need counseling, and her providers have noted no deficits in social functioning; (3) the plaintiff has mild limitations in concentration, persistence, or pace, as she reported problems with memory, completing tasks, handling stress, and handling changes in routine; however, the record does not contain any mental status examinations that support a finding of significant cognitive or attention deficits; and (4) the plaintiff has experienced no episodes of decompensation which

8

have been of extended duration, as there is no evidence of reference to any formal mental health treatment or psychiatric hospitalizations.

Considering all of the medical records, the ALJ determined that the plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. While the plaintiff does have severe physical impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations, 20 C.F.R., Subpart P, Appendix 1. Further, the ALJ found that Thompson has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) with the following limitations: (1) no more than occasional pushing, pulling, or operating foot controls with the right lower extremity; (2) no more than occasional climbing of ramps or stairs; (3) no more than occasional stooping or kneeling; (4) no climbing of ladders, ropes, or scaffolds; (5) no crouching or crawling; and (6) must avoid concentrated exposure to extreme cold, wetness, vibration, unprotected heights, or machinery. Considering the plaintiff's age, work experience, and RFC, the ALJ concluded that the plaintiff can perform a significant number of jobs. The vocational expert testified that given all of the plaintiff's limitations, she would be able to perform the requirements of representative sedentary and unskilled occupations such as an assembler, a packer, or an inspector.

9

V.

The plaintiff argues that the ALJ did not base her decision on substantial evidence and that the ALJ did not properly assess Dr. Blackwell's opinion of her RFC. Specifically, the plaintiff contends that the ALJ gave great weight to Dr. Blackwell's medical opinion, but did not adopt his entire RFC assessment.

The ALJ is responsible for considering the medical opinions of record and weighing each opinion. 20 C.F.R. §§ 404.1527, 416.927. The weight accorded to a medical opinion is dependent on a variety of factors described in the Commissioner's regulations, including the degree to which the opinion is supported by relevant evidence and consistent with the record as a whole. *Id*. The 1996 Social Security Ruling distinguishes the difference between a medical opinion and an RFC determination:

> Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment (s).

SSR 96-5p, 1996 WL 374183 (July 2, 1996) . Applying this legal standard, the ALJ was well within her authority to give great weight to Dr. Blackwell's opinion, but chose to not fully adopt his RFC finding. Considering the record as a whole,

including other RFC findings by other physicians and vocational experts, the ALJ made a proper RFC finding.

VI.

For the foregoing reasons, the plaintiff's Motion for Summary Judgment (ECF No. 10) is DENIED, and the defendant's Motion for Summary Judgment (ECF No. 12) is GRANTED. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

It is so **ORDERED**.

ENTER:  July 11, 2016

/s/  James P. Jones
United States District Judge